## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **MARCIA G. FLEMING, individually, on behalf of the Rollins, Inc. 401(K) Savings Plan and the Western-Industries North, LLC Retirement Savings Plan, and on behalf of all similarly situated participants and beneficiaries of the Plans,**<br>     **Plaintiffs,**<br><br>**v.**<br>**ROLLINS, INC.; WESTERN INDUSTRIES-NORTH; THE ADMINISTRATIVE COMMITTEE OF THE ROLLINS, INC. 401(K) SAVINGS PLAN; THE ADMINISTRATIVE COMMITEE OF THE WESTERN INDUSTRIES RETIREMENT SAVINGS PLAN; THE INVESTMENT COMMITTEE OF THE ROLLINS, INC. 401(K) SAVINGS PLAN; THE INVESTMENT COMMITTEE OF THE WESTERN INDUSTRIES RETIREMENT SAVINGS PLAN; PAUL E. NORTHEN, JOHN WILSON, JERRY GAHLHOFF, JAMES BENTON and A. KEITH PAYNE in their capacities as members of the Administrative and Investment Committees; and TERESA SMITH in her capacity as Retirement Plan Manager of Rollins and Western Industries-North; and John and Jane Does 1-10,**<br><br>     **Defendants.** | **CIVIL ACTION FILE NO: 1:19-cv-05732-ELR** |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

1

Plaintiff Marcia Fleming, individually, and on behalf of the Plans and the putative class, opposes Defendants' Motion to Dismiss the Amended Complaint.

## I. INTRODUCTION

Asserting quintessential claims for relief under ERISA,[1] Plaintiff alleges that Defendants, fiduciaries of two retirement plans: (1) failed to act loyally and to engage in a prudent process for selecting and retaining the Plans' investment options; (2) failed to act loyally and to engage in a prudent process for selecting and retaining the Plans' service providers; (3) engaged (or causing the Plans to engage) in transactions prohibited by ERISA; and (4) failed to remedy prior fiduciaries' continuing statutory violations.  (Doc. 25, Counts I-V.) Plaintiff seeks to hold Defendants personally liable for their fiduciary breaches under 29 U.S.C. § 1109(a), and jointly liable for their co-Defendants' fiduciary breaches under 29 U.S.C. § 1105.  (*Id.*)

Unable to refute these allegations, Defendants argue, and incorrectly so, that Plaintiff failed to exhaust all administrative remedies under ERISA.  In doing so, Defendants ignore that neither the Plans nor their Summary Plan Description ("SPD")  provide any administrative procedure for the claims alleged by Plaintiffs. Consequently, and as a matter of law, Plaintiff must be deemed to have exhausted

---

[1] The Employee Retirement Income Security Act, 29 U.S.C. §1001, *et seq.* ("ERISA").

all administrative remedies under the Plans. 29 C.F.R. § 2560.503-1(l)(1).

But even if a general unspecified and undefined review process could have been invoked, Plaintiff sufficiently has alleged that exhaustion would have been futile. That Defendants made clear in their pleadings that no meaningful review of Plaintiff's claims would have been afforded bolsters that conclusion.

Defendants alternatively argue that Plaintiff lacks standing to allege these claims. To the contrary, both the Amended Complaint and federal common law of ERISA show that Plaintiff has suffered an injury-in-fact due to Defendants' breaches of fiduciary duty and continuing violations of ERISA.

In addition to these collateral attacks, Defendants attempt to substantively challenge Plaintiff's claims. In doing so, Defendants fail to take the facts alleged in the complaint as true and to construe them in light most favorable to the plaintiff. *Henderson v. Emory Univ.*, 252 F. Supp. 3d 1344, 1348 (N.D. Ga. 2017) (standard of review on Rule 12(b)(6) motion). As discussed below, because Plaintiff's factual allegations sufficiently "raise a right to relief above the speculative level[,]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 551 (2007), this Court should reject Defendants' arguments.

In short, none of Defendants' arguments has merit. For these and other reasons discussed below, the Court should deny Defendants' Motion to Dismiss in its entirety.

## II.  PLAINTIFF'S ALLEGATIONS PRESUMED AS TRUE

Defendants include Rollins, Inc (the "Controlling Company"), members of the Rollins, Inc. 401(k) Savings Plan Administrative Committee (the "Rollins Plan Administrative Committee"),  and members of the Western-Industries North, LLC Retirement Savings Plan Administrative Committee (the "Western Plan Administrative Committee") (collectively, the "Administrative Committees") members of the Rollins, Inc 401(k) Savings Plan Investment Committee (the "Rollins Investment Committee") and members of the Western-Industries North, LLC Retirement Savings Plan Investment Committee (the "Western Investment Committee") (collectively the Investment Committees"), both defined contribution retirement plans, and fiduciaries of the Plans.

The Plans provide participants with investment options to choose from for their individual accounts. (*Id.* ¶¶ 41, 43, 48.)  During the Class Period, participants in the Plans could select from a limited menu of investment options.  A Prudential-affiliate served as recordkeeper for the Plans and was paid mostly through an asset-based (*i.e.,* indirect) revenue sharing structure during the majority of the class period.  (*Id.*)  A bank also affiliated with Prudential held the Plans' assets in trust. (*Id.*)

Beginning in 2017, Plaintiff was a participant in the Rollins Plan; at all material times, the putative class members are either participants in or beneficiaries

of the Plans. (*Id.* ¶¶ 26-27.)  Together, Plaintiff and the putative class members participated in all of the funds offered under the Plans during the Class Period. (*Id.* ¶ 27.)

A. **Defendants' Process for Selecting, Monitoring, and Retaining Service Providers for the Plans**

During the Class Period, the Plans, because of their massive size,[2] enjoyed economies of scale for recordkeeping and administrative services (Doc. 25, ¶ 71.) As such, the Plans could command far lower fees per participant than a much smaller plan. (*Id.*¶¶ 61, 62, 71.)

Despite this, Defendant selected and continued to retain Prudential as recordkeeper for the Plans many years before and during the Class Period. (*Id.* ¶ 61.)  At all material times, Prudential received indirect asset-based compensation for its recordkeeping services.  (*Id.* ¶¶ 61, 62.)  Upon information and belief, Defendants did so without ever soliciting bids from competing providers on a flat per-participant fee basis.  (*Id.* ¶¶ 61, 71, 169-71.)

This revenue sharing arrangement caused Prudential to receive continual, systematic and unjustified pay increases from the Plans without being tied to the number of participants or to the services it performed. (*Id.* ¶¶ 65, 66 & Exh. 11.)[3]

---

[2] As December 31, 2018, the Plans had over $730 million in net assets and over 13,300 participants with account balances. (Doc. 25, ¶ 48.)

[3] Indeed, Prudential's recordkeeping fees increased 88% from 2012 through 2017, while the number of participants increased by just 26% (Doc. 25, ¶ 66 & Exh. 1.)

This, in turn, caused the recordkeeping compensation paid to Prudential to greatly exceed a reasonable fee for the services provided. (*Id.* ¶¶ 67, 68, 70, 74, 171, & Exh. 2, 3.)   As a result, Plaintiff and the putative Class members lost the full potential for their account balances to grow over the remainder of their careers. (*Id.* ¶ 63.)

Defendants failed to monitor the amount of this revenue sharing let alone other sources of compensation received by Prudential. (*Id.* ¶¶ 74, 169, 171.)  As such, Defendants did not evaluate whether those amounts were competitive or reasonable for the services provided to the Plans.  (*Id.* ¶¶ 6, 59, 74, 169, 71.) Lower administrative expenses would have been readily available to the Plans had Defendants solicited competitive bids. (*Id.* ¶ 71.)  Defendants also did not avail themselves of the Plans' size to reduce mutual fund and other service provider fees or obtain sufficient rebates to the Plans for the excessive fees paid by participants. (*Id.* ¶¶ 63, 64, 72, 73, 169, 171, 172.)

As recordkeeping costs are directly correlated to the number of participants, there was no justification for the Plans to have uncapped asset-based compensation. (*Id.* ¶ 66.)  The fact that Defendants changed to a flat per-participant fee in 2018 at what appears to be a lower average per participant rate than the prior year shows that they recognized the imprudence of Prudential's previous compensation structure. (*Id.* ¶ 71.)  This recognition, however, did not induce the

Defendant to correct previous participant overpayments. (*Id.*)

Defendants continued to betray the Plans' participants in selecting, retaining, failing to monitor, and overpaying other service providers for the Plans, including broker-dealer LPL and its representative, James Bashaw. (*Id.* ¶¶ 82-84, & Exh. 5-7.)  Bashaw was known to have disregarded industry norms and regulations, and for having been accused of breaching his fiduciary duties in the past. (*Id.*)

Despite this tarnished public background, Defendants allowed Bashaw to serve as a Plan fiduciary, and paid him and his broker-dealer LPL almost $440,000. (*Id.*)  This is so even though neither Bashaw nor LPL added any material value to the Plans' investments. (*Id.* & Exh. 8.)

Defendants' improper payments to service providers like Prudential, LPL, Bashaw and Alliant for work that either was not performed or was not necessary for the operation of the Plan further resulted in an alienation of trust assets from participants in violation of ERISA, IRS and Department of Labor regulations and the Plans' and trusts' documents. (*Id.* ¶¶ 8, 81-84.)  It also jeopardized the Plans' tax exempt status, exposed Plaintiff and putative Class members to significant risks of negative tax consequences, resulted in transactions prohibited by ERISA and the IRS while reducing the net value of their accounts for over ten (10) years.  (*Id.* ¶¶ 8, 66, 81-84, 198-206.)

**B.    Defendants' Disloyal and Imprudent Process for Selecting, Monitoring, and Retaining Investment Options for the Plans and**

## Excessive Costs Consequently Borne by Participants

Defendants similarly employed imprudent and disloyal selection, retention and monitoring processes concerning the Plans' investments. (Doc. 25, ¶ 157.) Defendants selected, approved and made available to participants a limited menu of investments. (*Id.* ¶ 86.)  Plaintiff and the putative Class members were required to choose from this limited fund list created and maintained by the Defendants, and had no control or ability to use investments outside of this limited menu. (*Id.*)

Through the beginning of the class period, approximately 90% of the funds on this limited menu were high-cost, retail, actively managed funds. (*Id.* ¶¶ 124.) Bashaw, et al were incented to recommend that Defendants select share classes of funds that pay revenue sharing as way to surreptitiously continually increase his and other advisors' along with Prudential's fees. (*Id.* ¶¶ 61, 91.)  The fees reaped by Prudential as a result of these investments were not necessary for the operation of the Plans and in no way benefit the participants and beneficiaries. (*Id.* ¶ 106.)

Defendants retained these higher cost, historically poor performing, actively managed funds as options instead of removing or replacing them with funds that demonstrated consistent outperformance and lower expense ratios. (*Id.* ¶¶ 7, 98, 100, 101, 105, 128-32, 134-36, 157, & Exh. 12-15.)  Yet, Defendants knew, or with diligence should have known, that their high cost/high turnover limited the funds' ability to beat their U.S. Securities & Exchange Commission prospectus

benchmark over decades. (*Id.* ¶ 124.) Defendants failed to consider other investment options that were readily available to the Plan, such as low cost passively managed funds until 2015 or the least expensive available share class of actively managed funds with a longstanding history of outperformance over the identical higher cost versions. (*Id.* ¶¶ 115, 157-58.)

Defendants' lack of a prudent process for selecting, monitoring, and retaining investments further resulted in a failure of diversification. (*Id.* ¶¶ 137, 138, 140.) For example, Defendants offered participants just one type of fixed income mutual fund as an investment option. (*Id.* ¶¶ 123, 138.) Moreover, Defendants did not provide options for low correlation investments such as short-term government bonds, long-term bonds, global bonds, emerging markets, emerging markets bonds and commodities. (*Id.* ¶¶ 137, 140.) This is important because, by way of example, high quality long term bond index funds have comparatively higher yields and are virtually safe from default. (*Id.* ¶ 139 & Exh. 17.)

In violation of Plan documents, Defendants further concentrated the investment options in retail class shares when identical, better-performing and lower cost institutional share classes in the same funds were available. (*Id.* ¶¶ 94-97, 101, 103, 112-14, 120, 122, & Exh. 11.) The different share classes had the identical manager, were managed identically, and invested in the same portfolio of

securities. (*Id.* ¶ 97.)  The only difference was that the retail shares charged

significantly higher fees, resulting in retail class investors receiving lower returns.

(*Id.*)

Defendants' misconduct resulted in lost opportunity costs to Plaintiff and the

putative Class members.  (*Id.* ¶¶ 116-19.)  The cumulative excess costs caused by

the revenue sharing, lagging returns, and fund inefficiences during the Class Period

exceeded $10 million. (*Id.* ¶¶ 96, 102, 125-27, 136, & Exh. 9, 14, 15.)

## III.  ARGUMENT

### A.  Defendants' Failure to Exhaust Argument Lacks Merit.

Defendants first seek dismissal by arguing that Plaintiff failed to exhaust her

administrative remedies under ERISA.  As shown below, Defendants are wrong.

### 1.  ERISA Deems Plaintiff to Have Exhausted All Administrative Remedies.

ERISA requires every employee benefit plan to include a reasonable claims

procedure affording participants review of adverse benefit decisions *and* statutory

violations by a plan fiduciary. *Accord Bickley v. Caremark Rx, Inc*., 461 F.3d

1325, 1328 (11th Cir. 2006); *Maynard v. Merrill Lynch & Co*., 2008 U.S. Dist.

LEXIS 124338, *37-*39 (M.D. Fla. Oct. 28, 2008); 29 U.S.C. §§ 1021-22; 29

C.F.R. § 2560.503-1(b). "The claims procedures for a plan will be deemed to be

reasonable <u>only if</u> …

▪ [a] description of all claims procedures … is included as part of the

10

summary plan description [SPD;[4] and]

***

▪ … claim determinations are made in accordance with governing plan documents and that, where appropriate, the plan provisions have been applied consistently with respect to similarly situated claimants."

29 C.F.R. §§ 2560.503-1(b)(2), (5) (emphasis supplied).

Importantly, "<u>in the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan</u>." 29 C.F.R. § 2560.503-1(l)(1) (emphasis supplied). "Deemed exhaustion" leaves a claimant free to pursue "any available remedies" in federal district court. *Id. Accord Hoak v. Plan Adm'r of the Plans of NCR Corp.*, 389 F. Supp. 3d 1234, 1270-71 (N.D. Ga. 2019); *Tindell v. Tree of Life, Inc.*, 672 F. Supp. 2d 1300, 1309 (M.D. Fla. 2009); *Maynard,* 2008 U.S. Dist. LEXIS 124338, at \*39; *Stefansson v. Equitable Life Assurance Soc'y,* 2005 U.S. Dist. LEXIS 21723, \*31 (M.D. Ga. Sep. 19, 2005). *See also Eastman Kodak Co. v. STWB, Inc.*, 452 F.3d 215, 222 (2d Cir. 2006) (deemed exhaustion provision "was plainly designed to give claimants faced with inadequate claims procedures a fast track into court"); *Linder v. BYK-Chemie USA, Inc.,* 313 F. Supp. 2d 88, 94 (D. Conn. 2004) ("[T]he regulation is

---

[4] The SPD, which plan administrators must provide employees, gives details of the benefits provided by the company, and articulates the claims procedure available to present and adjudicate ERISA claims. 29 U.S.C. §§ 1021-22.

unequivocal that any failure to adhere to a proper claims procedure is sufficient to deem administrative remedies exhausted.").

The doctrine of deemed exhaustion applies here.  Although they contemplate that complaints about benefits or investment options may arise, the Plans provide a grievance procedure for *only* for two types of claims: (1) those "relating to the amount of any payment due under the Plan[;]" and (2) those concerning "failure or error in implementing an investment direction with respect to a claimant's Account[.]" (*Id.* ¶ 145. *See also* Doc. 16-4, § 11.7(a); Doc. 16-5, § 11.8(a).)  The Plan documents available to the Plaintiff did not contain any grievance procedure available to participants for any of the ERISA violations alleged in the Amended Complaint.  (Doc 25, ¶ 145.)   Plaintiff was not required to avail herself of a remedy that did not exist; rather, her claims alleged in the Amended Complaint are deemed exhausted under 29 C.F.R. § 2560.503-1(l)(1).  *See also Maynard*, 2008 U.S. Dist. LEXIS 124338, at *41 (participant "was not required to infer from the Plan document the availability of an unmentioned appellate procedure that, so far as the record shows, was not in existence").

In arguing otherwise, Defendants rely on cases which are legally and factually inapposite.  For instance, the "deemed exhausted" language in 29 C.F.R. § 2560.503-1(l) was not in effect when the claims arose in *Perrino v. S. Bell Tel. & Tel. Co.,* 209 F.3d 1309 (11th Cir. 2000) and *Counts v. Am. Gen. Life & Accident*

*Ins. Co.,* 111 F.3d 105 (11th Cir. 1997).  Consequently, the Court in those cases

was not required to waive ERISA's exhaustion requirements based on "technical

deficiencies" in the plans' respective claim procedures. *See Perrino,* 209 F.3d at at

1312, 1317; *Counts,* 111 F.3d at 107-08.

*Bickley* is also inapposite.  Although *Bickley* involved allegations that a

fiduciary breached its ERISA duty by mishandling plan assets, the plan there --

unlike the Plans here -- contained a general grievance procedure for addressing

claims that a fiduciary "misuse[d] the plan's money[.]" 461 F.3d at 1329.  Thus, the

concept of deemed exhaustion was not implicated.  *Id.* at 1330.[5]

Similarly, *Lanfear v. Home Depot, Inc.,* 536 F.3d 1217 (11th Cir. 2008),

upon which Defendants rely, is inapposite.  First, the plan in *Lanfear,* unlike the

Plans here, provided an administrative remedy for wide range of claims, including

"any grievance, complaint or claim concerning any aspect of the operation or

administration of the Plan or Trust, including but not limited to claims for benefits

and complaints concerning the investments of Plan assets[.]" *Id.* at 1224.  Second,

---

[5] *Bickley* is further inapposite because the plaintiff there did not sue the plan
administrator (Georgia-Pacific) or the plan.  461 F.3d at 1329-30.  Rather, he sued
the plan's third-party claims administrator (Caremark), but (unlike here) did not
allege whether Georgia-Pacific was aware of Caremark's alleged conduct.  *Id.* at
1330.  On these distinguishable facts, the Court emphasized that exhaustion would
have provided the plan administrator and trustees an opportunity to independently
pursue a claim against Caremark before the plaintiff filed suit.  *Id.*  As Plaintiff
here did not sue Prudential or the other service providers to the Plans, the concerns
at issue in *Bickley* are not present.

plaintiffs in *Lanfear*, unlike Plaintiff here, sought ERISA benefits. *Id.* Not surprisingly, deemed exhaustion was not even an issue in *Lanfear*. In contrast, deemed exhaustion applies here.

### 2. Alternatively, Exhaustion Should Be Excused as Futile.

Alternatively, this Court should excuse any failure by Plaintiff to exhaust her administrative remedies on the basis of futility. Courts consistently have held that when a plaintiff challenges an established policy, as here, "[t]le law does not require parties to engage in meaningless acts or to needlessly squander resources as a prerequisite to commencing litigation." *Fallick v. Nationwide Mut. Ins. Co.,* 162 F.3d 410, 419-20 (6th Cir. 1998). *Accord Nat'l Renal All., LLC v. Blue Cross & Blue Shield of Ga., Inc*., 598 F. Supp. 2d 1344, 1348 (N.D. Ga. 2009).

That Defendants maintain in their Motion to Dismiss that no breach of fiduciary duty even occurred bolsters that exhaustion would have been futile. *See Fallick,* 162 F.3d at 410, 419-20 (where defendant "ha[d] never demonstrate[d] that it would alter or even consider altering its underlying methodology," exhaustion was a pointless exercise). In this regard, the following explanation in *Fallick* is persuasive:

> Clear and positive evidence of the futility of exhausting the Plan's administrative remedies may also be found by looking to the purposes of the exhaustion of remedies doctrine …. In this case, requiring Fallick to exhaust Nationwide's formal administrative appeals process would in fact be contrary to the policies served by exhaustion…. First, Fallick's lawsuit is not frivolous, nor is it likely, after two years of

14

inquiries and perpetual stalemate, that a forced return to the administrative process would make these proceedings less adversarial. Second, were Fallick to exhaust his remedies, both he, the class he seeks to  represent, and Nationwide would all incur additional litigation costs. Third, the factual record is already very well established here. Finally, while Nationwide might make further symbolic, token concessions by correcting individual accounting errors that should not have been made in the first instance, this Court is certain that Nationwide will not seriously reconsider its methodology. Every such adjustment is but a pyrrhic victory for Fallick and the proposed class. Consequently, exhaustion of administrative remedies in the instant matter would be futile.

*Id.* at 420-21 (internal citations omitted).

This Court should reject Defendants' exhaustion argument for the same reasons. The exhaustion requirement is intended to "reduce the number of frivolous lawsuits under ERISA, minimize the cost of dispute resolution, enhance the plan's trustees' ability to carry out their fiduciary duties expertly and efficiently by preventing premature judicial intervention in the decision-making process, and allow prior fully considered actions by pension plan trustees to assist courts if the dispute is eventually litigated." *Mason v. Cont'l Group, Inc.,* 763 F.2d 1219, 1227 (11th Cir. 1985).  These purposes are not served by "empty exercise[s] in legal formalism," *National Renal Alliance, LLC,* 598 F. Supp. 2d at 1356, which is what exhaustion would be here.

At the very least, Plaintiff's allegations raise a "reasonable expectation" that discovery will provide further evidence of Defendants' breaches of fiduciary duty. *See Twombly*, *supra*.  That such evidence will further prove the futility of claim-

by-claim appeals in light of Defendants' business decision to continue its

administrative practices across the board is yet another reason to deny their Motion

to Dismiss.

**B. Plaintiff Has Standing to Seek Relief under ERISA.**

Defendants then incorrectly argue that Plaintiff lacks constitutional standing

because: (1) she was not invested in 9 of the 14 allegedly imprudent investment

options under the Plans; (2) Defendants' acts or omissions did not cause her harm;

(3) her claims are temporally foreclosed; and (4) she never participated in the

Western Plan.  Defendants are wrong for multiple reasons.

A plaintiff has standing under Article III if, as here, her injury is concrete

and particularized, fairly traceable to the challenged action, and redressable by a

favorable ruling.  *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.,*

781 F.3d 1245, 1251 (11th Cir. 2015).  At the motion to dismiss stage, Plaintiff

needs to provide only general factual allegations of injury resulting from the

Defendants' conduct.  *Owens v. Metro. Life Ins. Co.,* 2015 U.S. Dist. LEXIS

48632, *8 (N.D. Ga. Apr. 14, 2015) (citing *Bochese v. Town of Ponce Inlet*, 405

F.3d 964, 975 (11th Cir. 2005)). Article III standing may exist solely by virtue of

"statutes creating legal rights, the invasion of which creates standing." *Palm Beach

Golf*, 781 F.3d at 1251.

As such, and contrary to Defendants' arguments, Article III standing in class

actions does not always require the lead plaintiff to suffer the same personal injuries as other putative class members, especially where, as here, she alleges injury resulting from Plan management on the whole. *See In re Internap Network Servs. Corp. Sec. Litig.,* 2012 U.S. Dist. LEXIS 197368, \*7 (N.D. Ga. Aug. 22, 2012) (plaintiffs had standing to sue on alleged securities fraud misstatement even though none of them purchased the securities after the alleged misstatement) (citing *Upton v. McKerrow*, 887 F. Supp. 1573, 1577 (N.D. Ga. 1995) (same). This rule, in fact, has commonly been adopted in ERISA cases where the plaintiff sues based upon the same alleged common scheme. *See Velazquez v. Mass. Fin. Servs. Co.,* 320 F. Supp. 3d 252, 257-58 (D. Mass. 2018) (to have constitutional standing, "plaintiff need not have invested in each fund at issue, but must merely plead an injury implicating defendants' fund management practices"); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, 2016 U.S. Dist. LEXIS 104244, \*13-15 (C.D. Cal. Aug. 5, 2016) (plaintiffs had standing to challenge investments they did not purchase, as their allegations related to defendants' plan management and fund selection process), *cited in Cryer v. Franklin Templeton Res., Inc*., 2017 U.S. Dist. LEXIS 150683, \*10-11 (N.D. Cal. July 26, 2017) ("in determining constitutional standing, courts look not to individual funds but 'to the nature of the claims and allegations to determine whether the pleaded injury relates to the defendants' management of the Plan as a whole'"); *Wildman v. Am. Century Servs., LLC*, 2017

17

U.S. Dist. LEXIS 200574, *7-8 (W.D. Mo. Dec. 6, 2017) (plaintiff had standing where, as here, she alleged that plan was injured by defendants' failing to capture revenue-sharing payments, retaining a high-cost record-keeper, and engaging in prohibited transactions; that these injuries were traceable to Defendants' conduct; and they were likely to be redressed by a favorable decision) (citing *Braden*, 588 F.3d at 593).  This makes sense given that "recovery for a violation of 29 U.S.C. § 1109 for breach of fiduciary duty inures to the benefit of the plan as a whole, and not to an individual beneficiary." *Paulsen v. CNF Inc*., 559 F.3d 1061, 1073 (9th Cir. 2009) (citing *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985)). Stated simply, Plaintiffs asserting 29 U.S.C. § 1132(a)(2) claims in a derivative capacity may establish injury-in-fact by pointing to Plan losses and because, in any event, they have class standing to assert breach of duty of loyalty and prudence claims on behalf of all Plan participants injured by defendants' common course of conduct. *Russell*, 473 U.S. at 140.

Under this same reasoning, Plaintiff has standing to allege claims related even to those funds in which she did not invest during the Class Period. Plaintiff's claim is not based solely on the underperformance of any one investment option; rather, Plaintiff's allegations related to the various investment options are the byproduct of Defendants' disloyal and imprudent process when structuring and managing the entire Plans.  Federal courts regularly apply 29 U.S.C. §1132(a)(2) to

grant standing to plaintiffs even though they may not have invested in every fund they challenge.[6] *See Braden,* 588 F.3d at 593 (plaintiffs have standing even though their claimed injury may "sweep beyond" their own); *Krueger v. Ameriprise Fin., Inc.,* 304 F.R.D. 559, 567 (D. Minn. 2014) (same); *Clark v. Duke Univ.*, 2018 U.S. Dist. LEXIS 62532, *11 (M.D.N.C. Apr. 13, 2018) (plaintiff had standing to sue regarding 375 plan investments in which he did not invest in); *Leber v. Citigroup 401(k) Plan Inv. Comm.,* 323 F.R.D. 145, 158 (S.D.N.Y. 2017) ("[P]laintiffs are suing in a representative capacity and can prevail on behalf of the Plan so long as they show that defendants breached their duties of loyalty and prudence with respect to any of the Plan's investment options."); *Moreno v. Deutsche Bank Ams. Holding Corp.,* 2017 U.S. Dist. LEXIS 143208, *29 (S.D.N.Y. Sep. 5, 2017) (plaintiffs could sue for funds they did not invest in because "the alleged harms are premised on the process Defendants used to manage the Plan, the claims involve similar inquiries and proof, and thus implicate the same set of concerns"); *Glass Dimensions, Inc. v. State St. Bank & Trust Co*., 285 F.R.D. 169, 175 (D. Mass. 2012) (plaintiff established constitutional standing with respect to the 257 funds

---

[6] For this same reason, Defendants' claim that "the funds in Plaintiff's GoalMaker portfolio have seen double-digit gains since 2017," besides falling outside the four corners of the Amended Complaint, would be legally irrelevant even if proven true.

that it did not purchase).[7]

That Plaintiff supposedly did not participate in the Rollins Plan prior to 2017 does not temporally deprive her of standing to allege a continuing breach of fiduciary duty that incepted years before.  *Accord, generally, Tibble v. Edison Int'l*, 575 U.S. 523, 135 S. Ct. 1823, 1828 (2015).  Likewise, that Plaintiff was not a participant in the Western Plan does not deprive her of constitutional standing, as her litigation incentives are sufficiently aligned with those of the putative class members who participate in the Western Plan.  As one court explained, "an individual in one ERISA benefit plan can represent a class of participants in numerous plans other than his own, if [as here] the gravamen of the plaintiff's challenge is to the general practices which affect all of the plans."  *Fallick,* 162 F.3d at 422 (citations omitted).  In other words, "once a potential ERISA class representative establishes his individual standing to sue his own ERISA-governed plan," as Plaintiff has done here, "there is no additional constitutional standing

---

[7]In arguing otherwise, Defendants misplace reliance on *Patterson v. Stanley*, 2019 U.S. Dist. LEXIS 174832 (S.D.N.Y. Oct. 7, 2019).  But the *Patterson* plaintiffs, as noted by the defendants in their motion to dismiss reply brief, did not "challenge general Plan-wide decisions that affected all participants. Rather, they challenge[d] distinct fiduciary decisions to retain particular investment options, based on particular alleged defects in those funds and the availability of particular alternatives."  (A copy of the *Patterson* defendants' reply brief in that case is attached as Exh. A.)  In contrast, and as discussed above, Plaintiff's claims here are not based solely on the underperformance of any one investment option, but also on Defendants' disloyal and imprudent process when structuring and managing the entire Plans.

requirement related to his suitability to represent the putative class of members of other plans to which he does not belong." *Id.* at 424. *Accord Braden*, 588 F.3d. at 593; *Dezelan v. Voya Ret. Ins. & Annuity Co*., 2017 U.S. Dist. LEXIS 104572, *19-20 (D. Conn. July 6, 2017). *See also Forbush v. J.C. Penney Co., Inc.,* 994 F.2d 1101, 1106 (5th Cir. 1993) (because plaintiff sufficiently alleged that defendants violated their duties through claims procedure that was applied uniformly to class members, her participation in only one of four plans at issue still sufficed for Article III standing), *abrogated on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

### C.  Plaintiff Has Stated Viable Claims under ERISA.

Defendants also make disingenuous, general challenges to Plaintiff's allegations.  For example, Defendants argue that the Amended Complaint is deficient insofar as "[i]t contains no allegations regarding the fiduciaries' decision-making process." (Doc. 34-1, p. 21.)  As a matter of law, however, a plaintiff does not need to plead specific facts relating to the methods employed by the ERISA fiduciary if, as here, the complaint contains sufficient "facts that, if proved, would show that an adequate investigation would have revealed to a reasonable fiduciary that the investment at issue was improvident."  *In re Citigroup ERISA Litig.*, 662 F.3d 128, 141 (2d Cir. 2011) (citation and quotation marks omitted).  The pleading standard in this respect is relaxed because "no matter how clever or diligent,

21

ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences." *Braden*, 588 F.3d at 598. In any event, Defendants' argument in this regard fails because the Court, based on Plaintiff's circumstantial factual allegations, reasonably may "infer from what is alleged that the process was flawed." *Id.* at 596.

Along the same lines, Defendants mischaracterize the Amended Complaint as a "shotgun pleading" insofar as it "asserts claims against multiple defendants without specifying which defendant is responsible for which alleged wrongful act or omission." (Doc. 34-1, pp. 21-22.)  But because Plaintiff alleged sufficient facts supporting that Defendants are all functional fiduciaries under 29 U.S.C. § 1002(21)(A) by virtue of the discretion each of them exercised in the administration of the Plans and Plan assets (*e.g.,* Doc. 25, ¶¶ 43-44), each Defendant is jointly liable for his/its co-fiduciary's violations of ERISA under 29 U.S.C. § 1105.

Not only do Defendants overlook these ERISA precepts, but also they ignore that ERISA actions are governed by the general notice pleading standard of Fed. R. Civ. P. 8(a).  In meeting this "simplified pleading standard," a complaint "need only 'give the defendant[s] fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.,* 781 F.3d 1245, 1260 (11th Cir. 2015) (citations omitted).  The

22

Amended Complaint satisfies this requirement.

### 1.  Teresa Smith, Rollins, and Western are Functional Fiduciaries.

Contrary to Defendants' contention, Defendants Rollins and Western, in their capacities as the respective administrators of the Plans, as well as Teresa Smith were *de facto* fiduciaries under ERISA to the extent that they exercised discretionary authority or discretionary control respecting the administration or management of the Plans, or exercised authority or control respecting the management or disposition of their assets. *Accord* 29 U.S.C. § 1002(21)(A). Because these and the other Defendants exercised discretion in selecting, monitoring, and retaining investment options as well as service providers for the Plans (Doc. 25, ¶¶ 30, 34, 39, 42-43), they are ERISA fiduciaries.[8]

### 2.  Plaintiff Has Pled Sufficient Facts to Show Breach of Loyalty and Prudence in Counts I and II.

In Counts I and II, Plaintiff alleges that Defendants breached their fiduciary duties of loyalty and prudence -- "the highest known to law[,]" *Fuller v. SunTrust Banks, Inc.*, 744 F.3d 685, 695 (11th Cir. 2014).  ERISA's duty of loyalty requires fiduciaries to act "solely in the interest" of plan participants and beneficiaries and "for the exclusive purpose of providing benefits to participants" and "defraying

---

[8] Defendants' claim that Smith acted only in a ministerial (*i.e.,* nondiscretionary) role is outside the four corners of the Amended Complaint and, as such, should not be considered on a Motion to Dismiss. *Accord Henderson v. Emory Univ.*, 252 F. Supp. 3d 1344, 1348 (N.D. Ga. 2017) (stating standard of review on Rule 12(b)(6) motion).)

reasonable expenses of administering the plan." *accord Pledger v. Reliance Trust. Co*., 240 F. Supp. 3d 1314, 1321 (N.D. Ga. 2017) (citing 29 U.S.C. § 1104(a)(1)(A)). This "most fundamental duty" requires fiduciaries to act with "an eye single" to the interests of participants and beneficiaries. *Pegram v. Herdrich*, 530 U.S. 211, 224, 235 (2000).  The duty of loyalty, thus, prohibits fiduciaries from "engaging in transactions that involve self-dealing or that otherwise involve or create a conflict between the trustee's fiduciary duties and personal interests." *Terraza v. Safeway Inc.,* 241 F. Supp. 3d 1057, 1069 (N.D. Cal. 2017) (citing Restatement (Third) of Trusts § 78 (2007)).

ERISA's duty of prudence commands fiduciaries to act "with the care, skill, prudence, and diligence" of a prudent person "acting in a like capacity and familiar with such matters." 29 U.S.C. §1104(a)(1)(B).  Prudence focuses on a fiduciary's conduct in arriving at a decision, not on its results, and whether the fiduciary engaged in a reasonable decision-making process, consistent with that of a prudent person acting in a like capacity. *Accord Pledger*, 240 F. Supp. 3d. at 1321. Prudence includes "a continuing duty to monitor [plan] investments and remove imprudent ones." *Tibble*, 135 S. Ct. at 1828.

### a.  Breach of Prudence in Count I

In Count I, Plaintiff adequately alleges facts showing Defendants employed an imprudent process of selecting, monitoring, and retaining investment options for the Plans.  (Doc. 25, ¶¶ 151-65.)  For instance, Plaintiff alleges that participants

essentially were locked into funds which Defendants did not analyze.  Plaintiff

likewise shows that Defendants were, at best, deficiently slow to replace imprudent

funds and share classes and any share class improvements were inconsistently

applied to the detriment of the participants.   Such conduct violates the requirement

that plan fiduciaries continually monitor and remove imprudent investments.

*Tibble*, 135 S. Ct. at 1828.

Plaintiff's allegations further show that Defendants, under the guise of

offering participants flexibility, funneled investments into conflicted and actively

managed products, effectively limiting participants from investing in their Plans'

identical "R6" funds (the lowest cost institutional versions) as well as dozens of

other available higher performing and less risky fund choices.

Plaintiff strengthens her claim that Defendants lacked a prudent process

with allegations that specific investments that had a multi-year record of subpar

performance should have been removed.  *See also Pizarro v. The Home Depot,*

*Inc.*, 2019 U.S. Dist. LEXIS 185808, *8-9 (N.D. Ga. Sep. 20, 2019) (allegations

that Home Depot's decision-making process in allowing for retention of

chronically poor performing investments when there were better investments

available to the plan stated a claim of imprudence); *Henderson*, 252 F. Supp. 3d at

1351-52 (denying motion to dismiss where plaintiff alleged defendants

imprudently retained historically underperforming funds that charged excessive

fees when there were other lower cost, better performing investments that were available to the plan).[9]  Likewise, Plaintiff's allegation that Defendants failed to consider the issue of cost disparities between retail-class mutual funds and "materially identical institutional-class mutual funds," *Tibble*, 135 S. Ct. at 1826, states a claim of imprudence.  *See Braden,* 588 F.3d at 595-96 (allegations that plan included primarily retail share funds despite being able to obtain comparatively cheaper institutional funds due its size stated a claim for breach of fiduciary duty); *Cunningham v. Cornell Univ.,* 2017 U.S. Dist. LEXIS 162420, *22 (S.D.N.Y. Sep. 29, 2017) (claim that defendants breached their fiduciary duties by selecting specific retail funds over lower-cost, but otherwise identical, institutional funds were sufficient to survive motions to dismiss); *cf. Terraza*, 241 F. Supp. 3d at 1077 ("The Court can reasonably infer . . . that the Defendants acted imprudently by selecting the more expensive option, all else being equal.").

Defendants, nevertheless, point to several cases that discuss the appropriate range of fees and investments to be offered in a defined-contribution  plan, and argue that the fees for the Plans' investment options fell this range. *See, e.g., Renfro v. Unisys Corp.*, 671 F.3d 314 (3d Cir. 2011); *Hecker v. Deere & Co.,* 556 F.3d 575 (7th Cir. 2009); *Loomis v. Exelon Corp.,* 658 F.3d 667 (7th Cir. 2011).

---

[9] While Defendants challenge Plaintiff's benchmarks for measuring the investments' performance amounts, this Court must accept Plaintiff's allegations as true at the motion to dismiss stage. *Henderson*, 252 F. Supp. 3d at 1351-52.

However, the question of whether Defendants reasonably weighed the benefits and burdens when selecting, for example, retail shares over institutional shares, or actively managed funds over passive managed funds, is more appropriately taken up at the summary judgment stage. *Accord Henderson*, 252 F. Supp. 3d at 1352; *see also Terraza*, 241 F. Supp. 3d at 1077 ("Although Defendants may ultimately persuade the Court that they had legitimate reasons to select the [retail] investment options, . . . [Plaintiff] has satisfied her burden at this stage of the litigation by alleging facts from which the Court can reasonably infer that the defendants' decision-making process was flawed."); *Kruger v. Novant Health, Inc.,* 131 F. Supp. 3d 470, 476 (M.D.N.C. 2015) ("This court is not persuaded the Hecker analysis controls this case at the pleadings stage, . . . [in part because] Plaintiffs have alleged these fees are excessive, not by virtue of their percentage as in Hecker and its progeny [including *Loomis* and *Renfro*], but because there are different versions of the same investment vehicle available to the Plan that have lesser fees."); *cf. Cunningham*, 2017 U.S. Dist. LEXIS 162420, at *20-21 (distinguishing between a plan's "mix and range of investment options" and "the prudence of the inclusion of any particular investment option" (citing *Renfro*, 671 F.3d at 325-28)).

The remaining cases cited by Defendants are factually inapposite. Unlike the plaintiffs in those cases, Plaintiff has pled sufficient facts showing that the process employed by Defendants was imprudent. *Cf. White v. Chevron Corp.,*

27

2016 U.S. Dist. LEXIS 115875, *23-24 (N.D. Cal. Aug. 29, 2016) (no claim of imprudence where "plaintiffs [pled] no facts showing that the Plan fiduciaries failed to evaluate whether a stable value fund or some other investment option would provide a higher return and/or failed to evaluate the relative risks and benefits of money market funds vs. other capital preservation options"); *Divane v. Nw. Univ.*, 2018 U.S. Dist. LEXIS 87645, *20-21 (N.D. Ill. May 25, 2018) (dismissing allegations that actively-managed funds are *per se* imprudent); *Rosen v. Prudential Ret. Ins. & Annuity Co.*, 2016 U.S. Dist. LEXIS 180567, *45 (D. Conn. Dec. 30, 2016) (concentration of high-cost mutual funds, without more, not sufficient to state claim for breach of fiduciary duty), *aff'd*, 718 F. Appx. 3 (2d Cir. 2017).[10]

Defendants' remaining argument, that participants could have chosen different investment options, is a red herring. ERISA does not insulate from liability those plan fiduciaries who select imprudent investment options and does not relieve plan fiduciaries from their duty to prudently select and monitor investment funds offered under their 401(k) plan. *DiFelice v. U.S. Airways, Inc.,*

---

[10] As noted above, that Plaintiff has not identified the specific flaws in Defendants' decision-making process does not support dismissal. At this stage of the litigation, and in analogous circumstances, "courts have held that plaintiffs may rely on circumstantial factual allegations to show a flawed process—particularly one that [as here] involves the fiduciaries management of underperforming investments." *Pizarro,* 2019 U.S. Dist. LEXIS 185808, at *9.

497 F.3d 410, 418 n.3 (4th Cir. 2007); *In re YRC Worldwide, Inc. ERISA Litig.,*

2011 U.S. Dist. LEXIS 41019, *7 (D. Kan. Apr. 15, 2011).  In light of *Tibble's*

explicit recognition of a fiduciary's ongoing responsibility to monitor and remove

imprudent investments, and the fact that unreasonably high administrative

expenses can lead to imprudent investment decisions, Plaintiff has stated a facially

plausible claim that Defendants breached their duty of prudence with respect to a

revenue sharing fee arrangement with Prudential under which they abdicated their

responsibility to monitor and remove imprudent investments and reduce exorbitant

fees.  See also *Troudt v. Oracle Corporation*, 2017 U.S. Dist. LEXIS 22194 (D.

Colo. Feb. 16, 2017) (denying motion to dismiss amid analogous facts).

### b.  Breach of Duty of Loyalty in Count I

Plaintiff also sufficiently pleads that Defendants breached their duty of

loyalty regarding their investment decisions for the Plans.  For example, in

paragraph 131, Plaintiff alleges:

> Defendants chose the T. Rowe Price New Horizon fund that,
> according to its prospectus-stated objective and Russell 2000 Growth
> prospectus benchmark, was supposed to fill a portfolio's "small cap
> growth" category. However, Defendants failed to monitor this fund
> prudently and, therefore, overlooked (if not ignored) that the manager
> deviated from the fund's stated objective to cause it to drift into a
> mid-cap stock category (see Exhibit 13). As a result, participants who
> thought they were diversifying by investing in small-cap stocks
> became potentially over weighted in the mid-cap categories.

In misleading participants with respect to the process of making investment

decisions under the Plan, Defendants breached their duty of loyalty. *See Braden,* 588 F.3d at 598 ("It is uncontroversial that the duty of loyalty requires fiduciaries to 'deal fairly and honestly with all plan members,' and it is a breach of this duty affirmatively to mislead a participant or beneficiary.") (internal and other citations omitted).

By the same token, Plaintiff's allegations sufficiently raise the inference that Defendants breached their duty of loyalty by failing to disclose details about why the menu of investment options was largely limited to higher cost and lower performing revenue-sharing versions of actively managed funds. The allegations further support that insofar that Defendants failed to rebate improperly charged investment fees to the Plans, they allowed service providers to excessively profit from that use. These are precisely the type of acts that the duty of loyalty prohibits.

### c. Breach of Prudence in Count II

Contrary to Defendants' mischaracterization, Plaintiff alleges in Count II that the cost of recordkeeping under the shared-revenue system swelled out of proportion to the actual recordkeeping services provided by Prudential. Plaintiff further alleges that Defendants imprudently failed to employ strategies that would systematically lower recordkeeping fees, such as; periodically soliciting bids in order to compare cost and quality of recordkeeping services; leveraging the Plans'

"jumbo" size to negotiate for cheaper recordkeeping fees; and implementing a flat fee rather than an inflated revenue-sharing structure, until 2018.  That revenue-sharing may be common place in the industy does not negate the duty to ensure reasonable fees regardless of the fee structure. *Accord Henderson*, 252 F. Supp. 3d at 1351-53; *Terraza*, 241 F. Supp. 3d at 1077-78.  (N.D. Cal. 2017). Plaintiff has alleged that the unreasonable fees persisted for so long, in part, because Defendants opted for an arrangement that excluded the possibility of renegotiating recordkeeping fees or switching to more cost-effective recordkeepers.  These allegations sufficiently state a claim that Defendants breached their duty of prudence in the decision-making process. *Accord Henderson*, 252 F. Supp. 3d at 1352-53; *Nicolas v. Trs. of Princeton Univ.*, 2017 U.S. Dist. LEXIS 151775, *10-11 (D.N.J. Sept. 25, 2017).

Nevertheless, Defendants, citing *White, supra,* argue that ERISA imposed no duty upon them to switch recordkeepers or solicit bids for recordkeeping services on any particular cycle.  However, the specific allegations in *White* are readily distinguishable.  The plaintiff's excessive fee claim in *White* was based on only two allegations:

> that for two years at the beginning of the six-plus-year proposed class period, defendants paid recordkeeping fees using an asset-based revenue-sharing arrangement, and that those fees necessarily exceeded a prudent amount purely because they were asset-based and not based on the number of participants, and because plaintiffs believe that the fiduciaries did not seek competitive bids for the recordkeeping

services.

2016 U.S. Dist. LEXIS 115875, at *43.  Plaintiff, in contrast, has alleged a more

substantial and comprehensive situation involving additional facts discussed above.

The allegations in *White,* also unlike here, included no facts regarding the services

provided in exchange for the allegedly "excessive fees." *Id.* at *7-8. Additionally,

the court in *White* specifically noted that plaintiffs "alleged no facts suggesting that

the Plan fiduciaries could have obtained less-expensive [] services." *Id.* at *47.

Plaintiff has pled those facts here.

### d.  Breach of the Duty of Loyalty in Count II

Plaintiff likewise sufficiently alleges a breach of the duty of loyalty claim in

Count II.  Indeed, the relationship between Defendants and the Prudential-affiliated

service providers to the Plans, together with the allegations of excessive fees,

establishes an inference of disloyalty and imprudence.  *Accord Wildman*, 237 F.

Supp. 3d at 915 (citing *Tussey v. ABB, Inc.,* 746 F.3d 327, 336 (8th Cir. 2014)).

That Plaintiff alleges that Defendants failed to seek alternative recordkeeping

providers bolsters this conclusion. *Id.*

### 4.  Counts III and IV

As a derivative of Counts I and II, Plaintiff respectively alleges in Counts III

and IV that Defendants had breached their duty: (a) to monitor the performance of

any individual to whom it delegated any fiduciary responsibilities regarding the

Plans; and (b) remedy the continuing breaches of duty even if caused by prior fiduciaries.  Rollins and Western delegated fiduciary functions to the Investment Committee and the Administrative Committee of the respective Plans. [Doc. 25 at ¶¶ 16-17, 19].  These Committees consist of members to whom fiduciary functions also may have been delegated, including but not limited to the individuals named as Defendants. Further, Plaintiffs allege facts detailing precisely the ways in which said Defendants failed to monitor appointees, including, for example, that they lacked a system in place for doing so.  As a consequence of these failures, Plaintiff alleges the Plans suffered losses.

These allegations, taken as a whole, are sufficient to state a claim.  *Accord Pizarro*, 2019 U.S. Dist. LEXIS 185808, at *16-17.  *See also, generally, Crocker v. KV Pharm. Co.,* 782 F. Supp. 2d 760, 787 (E.D. Mo. 2010) ("Under ERISA, fiduciaries who have appointed other fiduciaries have a continuing duty to monitor the actions of the appointed fiduciaries.") (citation omitted); *Krueger*, 2012 U.S. Dist. LEXIS 166191, at *53 (similar allegations sufficient to state monitoring claim).  As ERISA's regulations make clear:

> At reasonable intervals the performance of trustees and other fiduciaries should be reviewed by the appointing fiduciary in such manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and statutory standards, and satisfies the needs of the plan.

29 C.F.R. § 2509.75-8, FR-17.  This is so even if the continuing misconduct

initially took place before any of the Defendants became fiduciaries. *Accord Fuller,* 2019 U.S. Dist. LEXIS 175913, at *23 (successor fiduciary may be held liable for failure to remedy a predecessor fiduciary's breach).[11]

### 5. Prohibited Transactions in Count V

In Count V, Plaintiff adequately alleges that Defendants violated 29 U.S.C. §§ 1106(a)(1)(A) and (D), which prohibits plan fiduciaries from, *inter alia,* "caus[ing] the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect … exchange of any property between the plan and a party in interest … or a transfer to, or use by or for the benefit of a party in interest, of any assets of the plan[.]" ERISA defines "party in interest" to include a "person" who provides services to a plan. 29 U.S.C. § 1002(14)(B).  "Person" includes entities.  *Id.* § 1002(9).

Prudential was a "party-in-interest" to the extent it provided recordkeeping and other services to the Plans.  Defendants caused the Plans to improperly pay Prudential excessive fees that were not proportional to the services it provided. These transactions occurred each time Prudential received fees in connection with

---

[11] Defendants fail to apprise this Court that ERISA's "ban on vicarious liability for fiduciary breaches committed outside one's fiduciary tenure [29 U.S.C. § 1109(b)] … does not prevent a successor fiduciary from being held liable for his independent fiduciary breach in failing to remedy the continuing effect of a predecessor fiduciary's breach. *Fuller,* 2019 U.S. Dist. LEXIS 175913, at *19 (citation omitted).

the Plans' investments in funds that paid revenue sharing to Prudential. Defendants were obligated to ensure that Prudential rebated the excessive fees (*i.e.,* assets of the Plans)[12] to the Plans;  this Defendants failed to do.  The allegations, therefore, state a violation of ERISA's prohibited transaction rules.

Defendants note that ERISA exempts certain categories of transactions from these rules, including payments for "services necessary for the establishment or operation of the plan" as long as "*no more than reasonable compensation is paid therefor.*" 29 U.S.C. § 1108(b)(2) (emphasis supplied).  Plaintiff's allegations vitiate the applicability of the exemption, at least at the Rule 12(b)(6) stage. *See Allen v. GreatBanc Tr. Co.,* 835 F.3d 670, 676-77 (7th Cir. 2016) (applicability of exemption is affirmative defense); *accord Braden,* 588 F.3d at 601-02.

**D. Statute of Limitations**

Defendants last argue that Plaintiff's claims are time-barred in light of disclosures of the revenue-sharing arrangements discussed above.  In so arguing, Defendants cite 29 U.S.C. § 1113(2), which provides:

[n]o action may be commenced under this subchapter with respect to a

---

[12] *See, generally, In re EpiPen ERISA Litig.,* 341 F. Supp. 3d 1015, 1021 (D. Minn. 2018) ("The Secretary of Labor has repeatedly defined 'plan assets' consistently with 'ordinary notions of property rights.'") (citing *Kalda v. Sioux Valley Physician Partners, Inc.,* 481 F.3d 639, 647 (8th Cir. 2007) (quotation omitted); EBSA Technical Release No. 2011-04 (Dec. 2, 2011) (rebates for medical loss ratio requirement may be ERISA plan asset), *available at* https://www.dol.gov/agencies/ebsa/employers-and-advisers/guidance/technical-releases/11-04.

> fiduciary's breach of any responsibility, duty, or obligation under this
> part . . .   three years after the earliest date on which the plaintiff had
> actual knowledge of the breach or violation . . . .

Defendants, however, conspicuously omit that "actual knowledge" as used in this
statute  is strictly construed, and that constructive knowledge will not suffice.  *Intel
Corp. Inv. Policy Comm. v. Sulyma,* 140 S. Ct. 768, 777 (2020).  As Plaintiff
alleges specifically that she lacked actual knowledge of any of Defendants'
misconduct prior to June 2019 (Doc. 25, ¶ 28), her claims are not time-barred.

Moreover, In *Tibble v. Edison Int'l*, 575 U.S. 523, 135 S. Ct. 1823, 1828
(2015), the Supreme Court stated that "a fiduciary normally has a continuing duty
of some kind to monitor investments and remove imprudent ones….so long as the
alleged breach of the continuing duty occurred within six years of suit, the claim is
timely."  Plaintiff has shown in her Complaint that this was a continuous violation
that occurred prior to, and continued during, the six year statute of limitations
period.

## IV.  CONCLUSION

Based on the foregoing, this Court should deny Defendants' Motion to
Dismiss.  In the event that any portion of the Amended Complaint is found
deficient, Plaintiff respectfully requests leave to address such deficiencies in a
second amended complaint.

Respectfully submitted this 7th day of August, 2020.


/s/ Paul J. Sharman
PAUL J. SHARMAN
Georgia State Bar No. 227207

The Sharman Law Firm LLC
11175 Cicero Drive, Suite 100
Alpharetta, GA 30022
Phone: (678) 242-5297
Fax: (678) 802-2129
Email: paul@sharman-law.com

Counsel for Plaintiffs

## LOCAL RULE 7.1(D) CERTIFICATION OF COMPLIANCE

I hereby certify that on August 7, 2020, the foregoing pleading has been prepared with Times New Roman 14 point font, one of the font and point selections approved by the Court in L.R. 5.1B, N.D. Ga.

/s/ *Paul J. Sharman*
PAUL J. SHARMAN
Georgia State Bar No. 227207

Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on August 7, 2020, the undersigned prepared this PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT and electronically filed this with the Clerk of Court using the CM/ECF system, which will automatically send notification to all counsel of record.

/s/ *Paul J. Sharman*
PAUL J. SHARMAN
Georgia State Bar No. 227207

Counsel for Plaintiff